IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| **MARIE JAFFE,** | * | |
| 8304 Tonawanda Drive | | |
| Charlotte, North Carolina 28277 | * | |
| | | |
| and | * | |
| | | |
| **THOMAS JAFFE,** | * | |
| 8304 Tonawanda Drive | | |
| Charlotte, North Carolina 28277 | * | |
| | | |
| *Plaintiffs,* | * | |
| | | |
| v. | * | Case No.: 8:20-CV-3453 |
| | | |
| **CHRISTINA CERVIERI, M.D.,** | * | |
| 6000 Executive Boulevard, Suite 510 | | |
| Rockville, Maryland 20852 | * | |
| | | |
| and | * | |
| | | |
| **CAPITOL ORTHOPAEDICS** | * | |
| **& REHABILITATION, LLC,** | | |
| 6000 Executive Boulevard, Suite 510 | * | |
| Rockville, Maryland 20852 | | |
| | * | |
| Serve On Resident Agent: | | |
| Stephen J. Rockower, M.D. | * | |
| 6000 Executive Boulevard, Suite 101 | | |
| Rockville, Maryland 20852 | * | |
| | | |
| and | * | |
| | | |
| **ADVENTIST HEALTHCARE, INC.** *d/b/a* | * | |
| **ADVENTIST HEALTHCARE SHADY** | | |
| **GROVE MEDICAL CENTER** | * | |
| 820 West Diamond Avenue, Suite 600 | | |
| Gaithersburg, Maryland 20870 | * | |
| | | |
| Serve On Resident Agent: | * | |
| Kenneth B. DeStefano, Esq. | | |
| 800 West Diamond Avenue, Suite 600 | * | |
| Gaithersburg, Maryland 20878 | | |

1

|     *Defendants*     .     |     *     |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## **AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

The Plaintiffs, Marie Jaffe and Thomas Jaffe, by their attorneys, Roy L. Mason, Zachary E. Howerton, and Smouse and Mason, LLC, hereby sue the Defendants, Christina Cervieri, M.D., Capitol Orthopedics & Rehabilitation, and Adventist Healthcare, Inc. *d/b/a* Adventist Healthcare Shady Grove Medical Center, and for cause state:

## **PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, Marie Jaffe, is, and was, at all times relevant hereto, a citizen and resident of Mecklenburg County, North Carolina.

2. Plaintiff, Thomas Jaffe, is, and was, at all times relevant hereto, a citizen and resident of Mecklenburg County, North Carolina and married to Plaintiff Marie Jaffe.

3. At all times relevant to this claim, Defendant, Christina Cervieri, M.D. ("Dr. Cervieri") is an orthopedic surgeon licensed in the State of Maryland specializing in the practice of sports medicine and arthroscopy in Montgomery County, Maryland. Dr. Cervieri is an orthopedic surgeon at Capitol Orthopedics & Rehabilitation serving Adventist Healthcare, Inc. *d/b/a* Adventist Healthcare Shady Grove Medical Center and was an employee, servant and/or actual and/or apparent agent of both Capitol Orthopedics & Rehabilitation and Adventist Healthcare, Inc. *d/b/a* Adventist Healthcare Shady Grove Medical Center on November 24, 2018, when she treated Marie Jaffe.

4. Defendant, Capitol Orthopedics & Rehabilitation, is a Maryland Corporation with its principal office located in Rockville, Maryland. Currently, Defendant Capitol Orthopedics

& Rehabilitation is a corporation organized in the State of Maryland involved in providing health care services in Montgomery County, Maryland, acting individually and through actual and/or apparent agents, servants and/or employees.

5. Defendant, Adventist Healthcare, Inc. *d/b/a* Adventist Healthcare Shady Grove Medical Center, is a Maryland Corporation with its principal office located in Gaithersburg, Maryland. Currently, Defendant Adventist Healthcare, Inc. *d/b/a* Adventist Healthcare Shady Grove Medical Center is a corporation organized in the State of Maryland involved in providing health care services in Montgomery County, Maryland, acting individually and through actual and/or apparent agents, servants and/or employees.

6. The amount of this claim exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney's fees.

7. Federal subject matter jurisdiction arises out of diversity of citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

8. The venue for this claim is proper in the United States District Court for the District of Maryland, Southern (Greenbelt) Division because the events giving rise to the action occurred in Montgomery County, located entirely within the geographic boundaries for the District of Maryland.

9. On September 30, 2020, the Health Care Alternative Dispute Resolution Office ordered that the case be transferred to the United States District Court for the District of Maryland. A copy of the Order of Transfer is attached.

## FACTS COMMON TO ALL COUNTS

10. Marie Jaffe ("Mrs. Jaffe") was born on November 1, 1978. She is a former executive who is currently staying at home to care for her two children during the global pandemic.

11. Marie has a history of complicated pregnancies. In 2014, Mrs. Jaffe miscarried a set of twins at twenty-three weeks gestation. In 2016, Mrs. Jaffe carried a pregnancy to term and delivered a baby girl. When Mrs. Jaffe became pregnant again in 2018, her health was closely monitored by her psychiatrist, Craig Chepke, M.D., and her obstetrician to ensure a safe and healthy delivery.

12. On November 23, 2018, while visiting her family in Gaithersburg, Maryland, Mrs. Jaffe fell and broke her ankle. She was rushed to the emergency department of the Adventist Healthcare, Inc. *d/b/a* Adventist Healthcare Shady Grove Medical Center.

13. The severe break Mrs. Jaffe sustained was a complex, comminuted, intra-articular fracture of the distal tibia and fibula, with intra-articular extension. This type of injury, coupled with Mrs. Jaffe's pregnancy status, elevated the difficulty of the surgery.

14. In order to properly perform this surgery, a surgeon must be familiar with fracture patterns and fixation techniques and have extensive experience to obtain anatomic reduction as quickly as possible to reduce both the operating room time and the patient/baby risk.

15. Dr. Cervieri was consulted and agreed to perform the risky surgery.

16. On November 24, 2018, Dr. Cervieri performed Mrs. Jaffe's surgery. The operative note by Dr. Cervieri is lacking the necessary level of detail, violating the standard of care owed Mrs. Jaffe.

17. The standard of care for Mrs. Jaffe's surgery required that her tibia and fibula be restored in all planes (sagittal, coronal, axial, rotational) along with an anatomic reduction of her

ankle joint. Dr. Cervieri inadequately reduced Mrs. Jaffe's ankle joint (the tibial plafond). Dr. Cervieri had a duty to meet the standard of care by achieving reasonable anatomic, or near-anatomic reduction. Although achieving complete anatomic reduction of Mrs. Jaffe's ankle joint would have been difficult, permitting Mrs. Jaffe to leave the operating room with manifestly inadequate reduction, as Dr. Cervieri did, violated the standard of care owed to Mrs. Jaffe.

18. Open reduction and internal fixation of Mrs. Jaffe's fibula was also required by the standard of care and would have promoted open reduction and internal fixation of the tibia as well. Dr. Cervieri did not address the fibula at all, once again violating the standard of care owed to her patient, Mrs. Jaffe.

19. Unless the surgeon is confident she will obtain acceptable reduction of the ankle joint as a result of their training, experience, and skill, the standard of care dictates that a patient must be left splinted and transferred to another facility. In this case, Mrs. Jaffe would have been transferred back to Charlotte, North Carolina, or she could have been taken to the operating room for a quick reduction and placement of external fixation and then either treated definitively in the external fixator or staged for formal open reduction internal fixation by a surgeon with the requisite training, experience, and skill that Dr. Cervieri either did not have or that she did not follow in Mrs. Jaffe's surgery.

20. Dr. Cervieri violated the standard of care owed to Mrs. Jaffe when she agreed to perform the complicated surgery with the knowledge that the injury was complex, there was a high complication rate, and there would be difficulty in obtaining adequate reduction. Surgeons of the limited training and experience of Dr. Cervieri must refer a patient with this fracture to a more experienced and more extensively trained surgeon.

21. During Mrs. Jaffe's postoperative clinic visit on December 11, 2018 conducted by Dr. Cervieri's surgical partner, the doctor noted that the quality of the reduction was "serviceable" and "reasonable." Mrs. Jaffe was not seen again by Dr. Cervieri. This description of her post-operative condition during this short visit was another violation of the standard of care as Mrs. Jaffe's reduction was neither "serviceable" nor "reasonable."

22. On December 17, 2018, Mrs. Jaffe was evaluated by John Ellington, M.D. in North Carolina. He recommended a revision of the open reduction and internal fixation of the tibia and to fix the fibula after Mrs. Jaffe delivered her child. This recommendation for a surgery to correct the surgical violations of the standard of care by Dr. Cervieri was made due to the complicated nature of Mrs. Jaffe's post-operative status and high-risk pregnancy.

23. On March 3, 2019, Mrs. Jaffe delivered her son and had an X-Ray taken of her ankle. The fractured had healed with significant deformity.

24. On December 9, 2019, surgery to correct the violations of the standard of care was performed on Mrs. Jaffe's ankle. The procedure included an ankle arthosis, extensive debridment of the right ankle, a calcaneal autograft, a bone marrow aspirate, and a hardware removal. A note on Dr. Ellington's operative record indicates that, "the case took 50% longer than normal due to complexity, deformity, and fixation of segments."

25. The malreduction performed by Dr. Cervieri of Mrs. Jaffe's distal tibia and joint surface has exacerbated the post-traumatic ankle arthritis of the original injury and lead to the following problems and the need for intervention: clinic visits, therapy, medical treatment, alternative therapies (acupuncture, chiropractor), injections, bracing, customized bracing, shoe fitting, orthotics, custom orthotics, need for future surgical intervention (ankle arthroscopy,

hardware removal, osteotomies, tendon or ligament repair, ankle fusion or ankle replacement, and surgery to address the complications from these surgeries).

26. As a result of Dr. Cervieri's violations of the standard of care Mrs. Jaffe has experienced arthritis, pain, suffering, disability, and severe future emotional and psychological damage as well as continual medical treatment and lost income.

27. Mrs. Jaffe still suffers from extraordinary pain, stiffness, swelling, and decreased strength in her ankle and the joints of her foot as a result of Dr. Cervieri's violations of the standard of care.. Mrs. Jaffe also has ongoing issues with infection, clot formation and scar tissue formation that will require continuing monitoring and intervention when she is symptomatic. Mrs. Jaffe's injuries have resulted in damage to the marital relationship of the Plaintiffs, including a loss of society, affection, assistance, companionship, sexual relations, and income.

## COUNT I
## Medical Malpractice

28. The Plaintiffs, Marie Jaffe and Thomas Jaffe, adopt and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

29. At all times complained of herein, Defendants, Christina Cervieri, M.D., Capitol Orthopedics & Rehabilitation, and Adventist Healthcare, Inc. d/b/a Adventist Healthcare Shady Grove Medical Center, owed to the Plaintiff a duty to exercise reasonable skill and care in the evaluation of her ankle injury and professional decision on whether or not to operate given Mrs. Jaffe's high-risk pregnancy and the complex surgery required.

30. At all times complained of herein, Defendant, Christina Cervieri, M.D. acting as the agent of Capitol Orthopedics & Rehabilitation and Adventist Healthcare, Inc. d/b/a Adventist Healthcare Shady Grove Medical Center while performing the duties of a primary care

7

physician and surgeon, violated the accepted standards of care and was negligent in her careless failure to properly evaluate the seriousness of Plaintiff Marie Jaffe's injury; failure to exercise precaution before agreeing to perform her surgery; failure to properly evaluate the risk of the surgery; failure to perform the surgery within the standard of care; and the negligent postoperative treatment and care of Plaintiff Marie Jaffe. These breaches of the standard of care include, but are not limited to, the following:

    a.    Failing to exercise reasonable care in the full, timely and careful assessment, evaluation, and diagnosis and/or treatment of the Plaintiff, Marie Jaffe's, medical conditions before agreeing to undertake her surgery;

    b.    Failing to provide the necessary detail level to the operative note during Mrs. Jaffe's surgery;

    c.    Failing to achieve reasonable anatomic, or near-anatomic reduction of Mrs. Jaffe's distal tibia during her surgery;

    d.    Failure to address and perform open reduction internal fixation on Mrs. Jaffe's fractured fibula during surgery;

    e.    Failing to properly inform the Plaintiff about the nature of her malreduction and not fully informing the Plaintiff about the probable complications;

    f.    Failing to act within the accepted standard of care in the care and treatment of Mrs. Jaffe; and

    g.    Being otherwise careless and negligent.

31. The Plaintiffs further aver that as a direct and proximate result of the misrepresented actions and misleading statements, and negligent and careless acts and omissions of the Defendants, individually and/or by and through their agents, servants, and/or employees,

performing the duties of primary care physician, violated the accepted standards of care and were negligent in their careless failure to properly evaluate the seriousness of Plaintiff Marie Jaffe's health and failure to exercise precaution before agreeing to perform her surgery, failure to properly evaluate the risk of the surgery, the inadequate postoperative treatment and care of Mrs. Jaffe, and misrepresenting to Mrs. Jaffe the seriousness of her postoperative condition. Had Defendants properly evaluated and monitored Plaintiff Marie Jaffe's health in order to provide an informed surgical opinion, ultimately deciding to not perform the surgery, Mrs. Jaffe's condition would not have deteriorated to its current status, she would not have required the subsequent surgery, would not have suffered permanent disability, and would not have suffered permanent emotional distress.

32. As a further result of the negligence of the Defendants, individually and/or by and through their agents, servants, and/or employees, failing to exercise reasonable skill and care in the evaluation of Plaintiff Marie Jaffe's ankle injury and professional decision on whether or not to operate, the Plaintiffs were compelled to incur extensive hospital and medical expenses and were otherwise injured and damaged.

33. The Plaintiffs further aver that all of these injuries and damages were caused by the negligent acts, omissions, and misrepresentations of the Defendants, individually and/or by and through their agents, servants, and/or employees, failing to perform the required timely and careful assessment, evaluation, and diagnosis and/or treatment, of the patient's medical condition, without any negligence of want of due care on the part of the Plaintiffs, thereunto contributing.

34. Plaintiff Marie Jaffe is a former executive suffering from long term health complications that impact her ability to work as a result of the Defendant's malpractice, and thus will

suffer income loss in the future as she has continual pain in her ankle that requires her to make physical accommodations at work and home. These problems will prevent her from properly performing the duties of her former and future employment.

WHEREFORE, Plaintiffs, Marie Jaffe and Thomas Jaffe, bring this claim against the Defendants, Christina Cervieri, M.D., Capitol Orthopedics & Rehabilitation, and Adventist Healthcare, Inc. d/b/a Adventist Healthcare Shady Grove Medical Center, and respectfully demands judgement for compensatory damages against the above listed Defendants, jointly and severally, in excess of Seventy-Five Thousand Dollars ($75,000.00), together with interest and costs of the suit.

## COUNT II
### Loss of Consortium

35. The Plaintiffs, Marie Jaffe and Thomas Jaffe, adopt and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

36. The Plaintiffs Thomas and Marie Jaffe were husband and wife at the time of the occurrence referenced herein. The Plaintiffs remain married.

37. The negligence conduct of the Defendants, described herein, directly and proximately caused injury to the marital relationship of the Plaintiffs, including a loss of society, affection, assistance, companionship, sexual relations, and income.

WHEREFORE, Plaintiffs, Marie Jaffe and Thomas Jaffe, bring this claim against the Defendants, Christina Cervieri, M.D., Capitol Orthopedics & Rehabilitation, and Adventist Healthcare, Inc. d/b/a Adventist Healthcare Shady Grove Medical Center, and respectfully demands judgement for compensatory damages against the above listed Defendants, jointly and severally, in excess of Seventy-Five Thousand Dollars ($75,000.00), together with interest and costs of the suit.

**JURY DEMAND**

The Plaintiffs herein demand that this matter be heard in front of a jury.

>Respectfully submitted,
>
>SMOUSE & MASON, LLC
>
> _/s/ Roy L. Mason_
>Roy L. Mason (00922)
>Zachary E. Howerton (20688)
>223 Duke of Gloucester Street
>Annapolis, Maryland 21401
>(t): (410) 269-6620
>(f): (410) 269-1235
>rlm@smouseandmason.com
>zeh@smouseandmason.com